# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DARRELL DAVIS,**

      **Plaintiff,**

**v.**                                                 **Case No:   6:15-cv-1936-Orl-22DAB**

**WESTFIELD INSURANCE COMPANY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:** Motion to dismiss/lack of jurisdiction (Doc. No. 26)
>
> **FILED:** August 16, 2016
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

Defendant, Westfield Insurance Company ("Westfield"), moves to dismiss Plaintiff Darrell Davis' ("Davis") Complaint based on an asserted lack of subject-matter jurisdiction. Davis has filed his response (Doc. 28) and an Affidavit (Doc. 29). The District Judge has referred the matter to the undersigned United States Magistrate Judge. For the reasons set forth herein, it is **respectfully recommended** that the motion be **denied.**

### *Background*

According to the instant docket, Davis sued his insurer, Westfield, in state circuit court, alleging that Westfield refused to make full payment to Davis for a June 1, 2015 water damage loss

("the circuit court action") (Doc. 2). On October 14, 2015, Davis brought an action against Westfield in state *county* court, alleging a June *2014* water loss to the insured property. (*Darrell Davis v. Westfield Insurance Company*, Case No. 2015-CC-002935-20-S). On October 15, 2015, Speed Dry, Inc. ("Speed Dry") sued Westfield in state small claims court, seeking damages for water extraction services provided to Davis related to the June 1, 2015 loss. (*Speed Dry, Inc. as Assignee of Darrell Davis v. Westfield Insurance Company,* Case No. 2015-CC-002920-20-S.)

In its Notice of Removal (Doc. 1), Westfield purported to remove all three actions to the instant docket. Plaintiff moved to remand the county court actions (Doc. 13), and the District Court granted that motion (Doc. 19), leaving the circuit court action brought by Davis pending in this docket.[1] Westfield filed an Answer and Affirmative Defenses denying coverage (Doc. 4) and now moves to dismiss,[2] contending that Davis lacks standing to sue Westfield, as Davis assigned his rights to the cause of action to Speed Dry. Westfield asserts that, absent standing, the court lacks subject-matter jurisdiction over this matter.

### *Standards of Law*

A motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) "can be asserted on either facial or factual grounds." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). A facial challenge to subject-matter jurisdiction is based "solely on the allegations in the complaint. When considering such challenges, the court must, as with a Rule 12(b)(6) motion, take the complaint's allegations as true." *Id.* Factual attacks, on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and

---

[1] The circuit court action purports to be within the diversity jurisdiction of this court.

[2] Although Defendant has filed an Answer, and motions asserting Rule 12(b) defenses are made before responsive pleading, "[t]he question of subject matter jurisdiction can be raised by any party, or by the court itself, at any point of a proceeding." *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1555 (11th Cir. 1989); *Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir.1984).

matters outside the pleadings, such as testimony and affidavits, are considered." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990). When the attack is factual, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

With respect to standing, Article III of the U.S. Constitution limits federal courts' jurisdiction to certain cases and controversies. *Clapper v. Amnesty Int'l USA*, — U.S. —, 133 S.Ct. 1138, 1146, 185 L.Ed.2d 264 (2013). As the Eleventh Circuit has summarized:

> Litigants must show that their claim presents the court with a case or controversy under the Constitution and meets the "irreducible constitutional minimum of standing." *Lujan [v. Defenders of Wildlife]*, 504 U.S. [555] at 560, 112 S.Ct. [2130] at 1236, [119 L.Ed.2d 351 (1992)]. To fulfill this requirement, a plaintiff must show that:
>
> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.
>
> *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81, 120 S.Ct. 693, 704, 145 L.Ed.2d 610 (2000). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" to establish standing. *Lujan,* 504 U.S. at 561, 112 S.Ct. at 2137.

*Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012).

### *Discussion*

Westfield presents a factual attack on jurisdiction, contending that Davis lacks standing due to signing a broadly worded Work Authorization & Assignment of Benefits ("the Authorization"), which purports to assign "any and all rights to recovery" from Westfield and "any and all remedies available at law" to Speed Dry (Doc. 26-1). The Authorization is not attached to or mentioned in the Complaint. In ruling upon a motion to dismiss, however, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged.

*SFM Holdings, Ltd. v. Banc of Am. Sec., LLC,* 600 F.3d 1334, 1337 (11th Cir. 2010); *Holland v. City Of Auburn, Alabama,* No. 15-15654, 2016 WL 4124281, at *1 (11th Cir. Aug. 3, 2016). Here, while the document is not presented in evidentiary form, it is related sufficiently to the standing issue and, as its authenticity is not challenged by Davis and no objection is raised to the consideration of the Authorization, the Court will allow it. Even so, the Court sees no basis for dismissal.

The Authorization lists the date of loss (6/1/15), the type of loss ("water") and the name and address of the "Insured" and the "Insurance Company." It reads, in pertinent part:

> I authorize Speed Dry, Inc. to perform all secondary services to safely mitigate this loss and prevent secondary damage. * * *
> I empower and direct Speed Dry, Inc. to determine the value of the services and repairs involved in this loss, to *bill the insurance company direct,* to be named on the claim check, and *to be paid directly by the insurance company.* * * *
> I hereby assign to Speed Dry, Inc. any and all rights to recovery from my insurance company or any other person or entity that may be responsible for payment for the damage to my property as a result of the above referenced loss. This shall include all work done to date and all work to be performed to repair and restore my property to its pre-loss condition. *This assignment shall not include contents replacement and shall only include additional living expenses provided by Speed Dry, Inc.*
> I assign the right to pursue any and all remedies available at law, and I agree to cooperate fully with Speed Dry, Inc. in the collection of the amount due. In order to expedite payment to Speed Dry, Inc., customer hereby appoints Speed Dry, Inc. as attorney in fact, authorizing Speed Dry, Inc. to endorse customers name on insurance and mortgage company checks or drafts, and to deposit checks or drafts *for Speed Dry, Inc. services and materials.* In the event of my failure to cooperate as set forth above, I understand and agree that all sums due and owing shall be my responsibility in the event that the lack of cooperation shall prevent recovery.

(Doc. 26-1; emphasis added).

The Authorization is, without question, a boilerplate assignment of rights. However, it is a contract and, as with all contracts, issues of interpretation turn on the intent of the parties. As Judge Antoon has held:

> The purpose of interpretation and construction of contracts is to determine the intent of the parties at the time they executed the contract. *See Huntington on the Green Condo. v. Lemon Tree I–Condo.*, 874 So.2d 1, 4 (Fla. 5th DCA 2004) ("The intent of the parties to the contract should govern the construction of a contract

> ...."); *see also* 11 Williston on Contracts § 30:2 (4th ed. 2012). If the meaning of a contract is unambiguous, a court must give effect to the contract as written, determining the meaning only from the contract language and without reference to any extrinsic evidence. *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir.2011); see also Williston on Contracts § 30:6. Interpretation of an unambiguous contract is generally a question of law. *Lawyers Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir.1995): see also *Detroit Diesel Corp. v. Atl. Mut. Ins. Co.*, 18 So.3d 618, 620 (Fla. 4th DCA 2009).
>
> Contract interpretation is a question of fact "only when an ambiguous contract term forces the court to turn to extrinsic evidence of the parties' intent." *Lawyers Title Ins. Corp.*, 52 F.3d at 1580. Whether a contractual ambiguity exists is a question of law. *Orkin Exterminating Co., Inc. v. FTC*, 849 F.2d 1354, 1360 (11th Cir.1988). A contract can be considered "ambiguous if 'reasonably susceptible to more than one interpretation.' " *Id.* (emphasis added) (quoting *Fabrica Italiana Lavorazione Materie Organiche, S.A.S. v. Kaiser Aluminum & Chem. Corp.*, 684 F.2d 776, 780 (11th Cir.1982)). "However, a true ambiguity does not exist merely because a document can possibly be interpreted in more than one manner." *Action Nissan, Inc. v. Hyundai Motor Am.*, 617 F.Supp.2d 1177, 1187 (M.D.Fla.2008) (emphasis added).
>
> Under Florida law, "a trial court may interpret a contract as a matter of law only when it is totally unambiguous or when any ambiguity may be resolved by undisputed parol evidence of the parties' intent." *Decoplage Condo. Ass'n, Inc. v. Deco Props. & Invs., Inc.*, 971 So.2d 860, 861 (Fla. 3d DCA 2007); see also Williston on Contracts § 30:7. Thus, if a contract is ambiguous, a court may consider undisputed extrinsic evidence to determine whether the evidence can resolve the ambiguity.

*Hous. & Residence Life, LLC v. Universal Tech. Inst. of Phoenix, Inc.*, No. 6:12-CV-874-ORL-28, 2013 WL 4506395, at *3–4 (M.D. Fla. Aug. 23, 2013).

Here, the Court finds that the contracting parties, Davis and Speed Dry, entered into a contract for Speed Dry to perform dry out services with respect to the water loss and the contract contained an assignment of benefits which was intended to apply solely *for the work that was done by Speed Dry*. Davis maintains this in his response, and has attached an uncontroverted Affidavit of the owner and president of Speed Dry, attesting to same (Doc. 28). Indeed, Westfield has acknowledged as much in its own filings. In its Notice of Removal (Doc. 1), Westfield attaches the Speed Dry complaint against Westfield. (Doc. 1-5) That complaint avers, in pertinent part:

> 5. Darrell Davis has assigned his benefits *for water extraction services performed by Speed*

>    *Dry, Inc*. as evidenced by exhibit B.

The Exhibit B referred to is the Work Authorization & Assignment of Benefits. Westfield does not dispute this allegation and, in fact, has recognized the limited nature of the assignment by twice representing to this Court that: "Speed Dry's claim is a 'run-of-the-mill' assignment of benefits claim *for water extraction services*." (Doc. 1, pp. 8-9, and Doc. 16, p. 8) (emphasis added).

The undersigned does not find the Authorization to be ambiguous, but to the extent Westfield finds it reasonably susceptible to more than one interpretation, the uniform and uncontested extrinsic evidence is more than sufficient to resolve any ambiguity as to the parties' intent, as a matter of law. As there is no factual support for a finding that Speed Dry owns the instant cause of action, it is **recommended** that the motion be **denied.**

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on August 26, 2016.

*David A. Baker*
_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy